## LEDOUX et al. v. GOZA.

As a general rule the trust reposed in an agent is personal; but this is modified by the usages of trade, where the interest of the employer and reasonable convenience require the custody of the property to be delegated to another.

When the nature of the business requires the employment of a sub-agent, the agent is not ordinarily responsible for the negligence or misconduct of the latter, if reasonable diligence has been used in the choice of such sub-agent.

An agent cannot be made responsible to his principal for exceeding his powers, where no injurious consequences are proved to have resulted therefrom to the latter.

Where a balance has been struck, and an account rendered by a factor to his principal, which is acquiesced in by the latter, interest may be charged, subsequently, on such balance, though formed in part of anterior interest. *Aliter,* where the account is not acquiesced in.

APPEAL from the District Court of Carroll, *Selby,* J. *Thomas* and *Snyder,* for the plaintiffs. *Stacy* and *Sparrow,* for the appellant. The judgment of the court was pronounced by

SLIDELL, J. The pricipal subject of controversy in this cause is a loss upon a quanity of cotton, which the defendant, a planter, consigned to the plaintiffs, his factors. The plaintiffs sold it at nine cents per pound; but, on delivery it was found to be wet and damaged, and the purchaser refused to keep it. The pressmen, with whom it was deposited by the plaintiffs, paid them a sum in compromise. The plaintiffs credited this amount in account with defendant, as also the nett proceeds of a subsequent sale, at a reduced price. The defendant before suit, disputed the correctness of plaintiffs account, as presented, only with regard to the loss upon the damaged cotton; insisting that the plaintiffs should have given him an additional credit, over the amount received from the pressmen, equivalent to the amount of the cotton at nine cents.

We cannot adopt the position assumed by the defendant in his correspondence and by his counsel in argument, that it was immaterial whether the damage arose from the plaintiffs' negligence, or that of the pressmen. It is in general true that the trust reposed in an agent is personal. But the general rule is, in many cases, modified by the usages of trade, where the interest of the employer and reasonable convenience require the custody of the property to be delegated to another. Where the nature of the business requires the employment of a sub-agent, the agent is not ordinarily responsible for the negligence or misconduct of the sub-agent, if he has used reasonable diligence in his choice. Here it was necessary, and according to the usual course of business, to send the cotton to a press, to be taken care of; and there was not a want of due care on the part of the plaintiffs in the selection of a depositary, nor subsequent negligence on their part before the damage was found to be done.

It is fully proved that the cotton arrived at New Orleans in good order. The

pressmen contended that it was wet before it arrived at the press and could be housed, to such a degree that they could not house it for fear of spontaneous combustion. The evidence appears to authorize that view, and to excuse the omission; but does not excuse the omission of other precautions which it is proved might still have been taken, and would have prevented the damage from being as great as occurred. We assume, therefore, that the pressmen did incur a liability to the defendant.

The plaintiffs have shown no authority to make a compromise with the pressmen; and it may be conceded that, in doing so without consulting their principal, they exceeded their powers, and made themselves answerable to him. The law is clear that when an agent violates his obligation to his principal by exceeding his authority, he must indemnify his principal if injurious consequences result. The defendant says: "I will take the $500 you received from the pressmen; but I hold you for the excess that you ought to have got from them, and have thrown away by the compromise." Now, the measure of damages is the injury sustained by the unauthorized act; and this involves the inquiry whether, under the evidence, we can say that the pressmen could have been held liable for a greater amount. Upon comparing the price for which the damaged cotton was sold with the standard of the first sale, assuming the weights of the uninjured bales of the same lot as a fair average, and making some allowance for a portion of the damage as attributable to inevitable accident by reason of the weather during its transit from the levée to the press &c., we feel bound to adopt the conclusion of the district judge, and hold the compromise not injurious to the principal.

The answer of the defendant sets up usury.

When a balance is struck and an account is rendered by a factor to his principal, and is acquiesced in, there is nothing illegal in charging subsequently interest on such balance of which anterior interest formed a component part.

There is an item of $197 86, charged for interest in the account rendered on the 30th June, 1841. We cannot allow interest upon the whole balance struck on that day, of which that item was a component part, as the defendant did not acquiesce in that account when rendered to him. In the account sued upon there is a claim of $12 50 as a commission of two and one-half per cent for a cash advance, to which the defendant objects, and which must be disallowed.

We cannot open the account rendered in May, 1840. Under the evidence the defendant must be considered as having approved that account, and sanctioned the payment made on the day of its rendition, by the transfer to his credit of the balance due by *G. W. Goza & Co.*

It is, therefore, decreed that the judgment of the District Court be reversed, and that the plaintiffs recover of the defendant the sum of $1046 78, with interest on the sum of $310 23 from the 30th June, 1841, until the 14th July, 1841; and on the sum of $348 92, from the 14th July, 1841, to the 22d October, 1841; and on the further sum of $848 92 from the 22d October, 1841, until paid, and costs of this suit in the court below, those of this appeal to be paid by the plaintiffs.